# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

MARIE BATTEASE,

Plaintiff,

-v.-                                         3:15-CV-867
                                             (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

PETER A GORTON, ESQ., for Plaintiff
MICHELLE L. CHRIST, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, by the Honorable Glenn T. Suddaby, United States District Judge, by Order dated February 5, 2016 (Dkt. No. 12), in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits on July 4, 2012, alleging disability beginning July 9, 2011.  (Administrative Transcript ("T") at 11, 206-17, 225).  The applications were denied initially on November 21, 2012. (T. 123-24).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 16, 2013 and April 23, 2014. (T. 64-102).  Vocational Expert ("VE") Connie Standhart testified on the second day of the hearing. (T. 86-102).  On May 5, 2014, ALJ Robert Wright found plaintiff was not disabled. (T. 8-26).  The ALJ's decision became

the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on May 13, 2015. (T. 1-6).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering

2

vocational factors such as age, education, and work experience . . . .
Assuming the claimant does not have a listed impairment, the fourth
inquiry is whether, despite the claimant's severe impairment, he has the
residual functional capacity to perform his past work. Finally, if the
claimant is unable to perform his past work, the [Commissioner] then
determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin,*

*Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more

than a scintilla" of evidence scattered throughout the administrative record. *Id.*

However, this standard is a very deferential standard of review " – even more so than

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

As of the date of the administrative hearing, plaintiff was 49 years old. (T. 68, 206). Plaintiff completed the tenth grade of high school in regular education classes, but subsequently obtained her general equivalency diploma and completed one year of college. (T. 68, 362). She resided with her two adult sons and her two year old grandson. (T. 68).

Plaintiff's employment history included work as a bartender, retail customer service representative, telemarketer, and deli worker. (T. 69-72, 231). Her most recent employment, as a cashier, ended in October 2008 when she was terminated after an altercation with her supervisor. (T. 69-70). Plaintiff testified that she had left other positions after disagreements with her supervisors, or after feeling "burnt out" from dealing with customers. (T. 70-72, 355).

4

Plaintiff was diagnosed with chronic obstructive pulmonary disease ("COPD"), and had a history of diabetes, arthritis, and back pain. (T. 298). Since 2009, she reported chronic fatigue and pain in her hips and legs that made it difficult to walk. (T. 77-80, 317, 329). Despite her frequent reports of pain, plaintiff had refused prescription pain medication due to her concerns about potential side effects. (T. 82, 247).

Plaintiff described her impairments as "mental not so much physical unless I stand/sit/walk or lift." (T. 248). She had a history of depression and anxiety that was treated with medications, and had seen a social worker for regular therapy sessions from November 2009 to February 2013. (T. 51-52, 72-73, 323-25). Plaintiff also reported panic attacks that were triggered by crowds, and flashbacks to the traumatic deaths of several friends. (T. 78, 363).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 14-20). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

As an initial matter, the ALJ determined that plaintiff met the insured status requirements through September 30, 2013. (T. 13). The ALJ next determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 9, 2011. (*Id*.). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: COPD, diabetes mellitus, anxiety, and

depression. (*Id.*). The ALJ found that plaintiff's other documented impairments, including sleep apnea, lumbar disorder, and median wrist neuropathy, were not severe. (T. 13-14). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P, including Listing 3.00, referring to respiratory disorders, Listing 9.00, referring to endocrine disorders, and Listing 12.00, referring to mental disorders. (T. 14-17).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform light work, but was limited to unskilled work which was simple, routine, and low stress (i.e., having only occasional decision making, changes in work setting, or interaction with others) in a clean air environment such as an office building or shopping mall. (T. 17-20). In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (*Id.*). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were not consistent with her activities of daily living,

objective medical findings, treatment modalities, and the ALJ's RFC. (T. 18). The ALJ next determined that plaintiff was unable to perform her past relevant work as a cashier. (T. 20). Relying on the VE testimony, the ALJ determined at step five that plaintiff would be able to perform jobs such as photocopy machine operator and folding machine operator. (T. 21, 90-93). Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date, July 9, 2011, through the date of the decision. (T. 21).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 8-23) (Dkt. No. 11).

2.    The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 21-22).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 5-13) (Dkt. No. 23). For the reasons stated below, the court concludes that the ALJ erred in evaluating the medical opinion evidence and finds that his RFC determination was not supported by substantial evidence. As a result, the ALJ's step-five analysis, and the ultimate finding that plaintiff was not disabled, were tainted. Accordingly, the court orders a remand for further administrative proceedings to properly assess the medical evidence related to plaintiff's physical and mental impairments in connection with the Commissioner's RFC determination.

**DISCUSSION**

## VI.    RFC EVALUATION/TREATING PHYSICIAN

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-

8

medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6

(N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL

374184, at *7).

## 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical

opinion of a claimant's treating physician, . . . the opinion of the treating physician is

not afforded controlling weight where . . . the treating physician issued opinions that

are not consistent with other substantial evidence in the record . . . ." *Halloran v.

Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002);

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the

reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

An ALJ may not arbitrarily substitute her own judgment for competent medical

opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## B. Application

As previously noted, the ALJ found that plaintiff could perform the full range of

light work, with certain nonexertional limitations. Under 20 C.F.R. § 404.1567(b),

light work is defined as follows:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying
> of objects weighing up to 10 pounds. Even though the weight lifted may be
> very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing
> and pulling of arm or leg controls. To be considered capable of performing
> a full or wide range of light work, you must have the ability to do
> substantially all of these activities. If someone can do light work, we
> determine that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability to sit

for long periods of time.

Social Security Ruling 83-10 elaborates on the requirements of light work:

> Since frequent lifting or carrying requires being on one's feet up to
> two-thirds of a workday, the full range of light work requires standing or
> walking, off and on, for a total of approximately 6 hours of an 8-hour
> workday. Sitting may occur intermittently during the remaining time. . . .
> Many unskilled light jobs are performed primarily in one location, with the
> ability to stand being more critical than the ability to walk.

SSR 83-10, 1983 WL 31251, at *5-6. *See also Poupore v. Astrue*, 566 F.3d 303, 305

(2d Cir. 2009) ("The full range of light work requires intermittently standing or walking

for a total of approximately 6 hours of an 8-hour workday, with sitting occurring

intermittently during the remaining time.").

As explained below, the ALJ reached his RFC determination after rejecting

medical opinion evidence related to plaintiff's ability to sit, stand, and walk; plaintiff's

ability to stoop; plaintiff's need to alternate positions on a regular basis during the

workday; and plaintiff's ability to maintain attention and concentration.  In doing so,

the ALJ improperly substituted his own judgment for competent medical evidence.

This resulted in an RFC determination that was not supported by substantial evidence.

Even if the ALJ did not err in assigning particular weight to the opinions of

plaintiff's treating physician and the consultative examiners, remand would still be

appropriate because there was no other medical opinion evidence to support the ALJ's

determination. With limited exception,[1] "an ALJ is not qualified to assess a claimant's

---

[1] When the medical evidence shows relatively little physical impairment, an ALJ can
render a common sense judgment about functional capacity without a physician's assessment.
*Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010).  This
exception does not apply here.

RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citation omitted); *see also Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand.)

### 1. Physical Limitations

In November 2013, Dr. Michael Freeman, who had been plaintiff's treating physician since August 2011, completed an RFC questionnaire. (T. 555-56). Dr. Freeman opined that plaintiff could sit for approximately six hours out of an eight hour day, but would need to alternate positions between sitting and standing approximately every half hour. (T. 556). He also opined that plaintiff could stand or walk for approximately four hours total during an eight hour workday, and could lift weight in excess of ten pounds for three to eight hours per workday. (*Id*.). The ALJ assigned "most" of Dr. Freeman's opinion "great weight," but assigned "little weight" to the treating physician's conclusion that plaintiff could only stand or walk for four hours each workday. In his decision, the ALJ stated that the discounted portion of Dr. Freeman's opinion was inconsistent with plaintiff's treatment notes. (T. 19).

The ALJ weighed orthopedic consultative examiner Dr. Michael Rosenberg's opinion in a similar manner. Dr. Rosenberg performed a consultative examination on October 28, 2013, and prepared a contemporaneous report of his findings. (T. 18, 541-44). Dr. Rosenberg also completed a separate Medical Source Statement dated October

30, 2013, but noted on the form that he had "no recollection" of plaintiff, and that his opinion was based upon his dictated report notes. (T. 545-550).

During the October 28, 2013 consultative examination, Dr. Rosenberg noted that plaintiff did not appear in distress. (T. 542). She could walk on heels and toes without difficulty and did not require an assistive device, but had a slight limp favoring her right leg. (T. 543). Plaintiff reported decreased sensation in her left leg that she described as a "tingling sensation." (*Id.*). Dr. Rosenberg did not include a functional assessment of plaintiff's ability to sit, stand or walk in this narrative report, and reported only that plaintiff had "a mild restriction for activities requiring mild or greater exertion because of her COPD." (T. 544).

Dr. Rosenberg did include a function-by-function report of plaintiff's ability to sit, stand, and walk in his subsequent Medical Source Statement. He opined that plaintiff could only sit, stand, or walk for a total of four hours each in an eight hour workday, and could only do each for thirty minutes at one time without interruption. (T. 546). In Dr. Rosenberg's opinion, plaintiff could operate foot controls on both the right and left side.[2] (T. 547). Citing plaintiff's knee pain, he opined that plaintiff could never stoop[3], kneel, crouch, or crawl. (T. 548).

_____

[2] The ALJ's RFC determination did not address plaintiff's ability to operate foot controls. (T. 17-20).

[3] "Stooping" means "bending the body downward and forward by bending the spine at the waist." SSR 83-14, 1983 WL 31254, at *2. "A complete inability to stoop would significantly erode the unskilled sedentary occupation base and a finding that the individual is disabled would usually apply." *Molina v. Barnhart*, No. 04 Civ. 3201, 2005 WL 2035959, at *8 (S.D.N.Y. Aug. 17, 2005) (quoting SSR 96-9p, 1996 WL 374185, at *8 ("An ability to stoop occasionally; *i.e.*, from very little up to one-third of the time, is required in most unskilled sedentary occupations.")).

The ALJ stated that he gave Dr. Rosenberg's opinion "great weight," but assigned "little weight" to that portion of the opinion that addressed plaintiff's ability to stand and walk. (T. 19). He discounted these findings on the basis that plaintiff's reported daily activities, stable medication regimen, and exclusive use of over the counter pain treatment were inconsistent with such significant functional limitations. (*Id*.). He also noted Dr. Rosenberg's statement that the opinion was based solely on his dictated report. (*Id*.).

After discounting the relevant portions of these medical opinions, the ALJ concluded that the record evidence supported an RFC that plaintiff could sit, stand, and walk for a total of six hours each in an eight hour workday, and had no restrictions on her ability to stoop. (T. 19). In reaching this RFC determination regarding plaintiff's physical limitations, the ALJ improperly substituted his own judgment in place of the opinions of plaintiff's treating physician and the consulting examiner. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (an ALJ may choose among properly submitted medical opinions, but may not set his own expertise against that of physicians who submitted opinions to him) (citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (in the absence of a supporting medical opinion, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion)); *Tricic v. Astrue,* No. 6:07-CV-997 (NAM), 2010 WL 3338697, at *3-4 (N.D.N.Y. Aug. 24, 2010) (the ALJ's determination that plaintiff could stand/walk and sit for about six hours in an eight-hour workday was not supported by substantial evidence where two treating doctors opined that plaintiff should avoid prolonged sitting and/or standing,

and no examining doctor provided a specific opinion about plaintiff's ability to sit or stand for particular periods of time); *DiVetro v. Commissioner of Social Sec.*, No. 5:05-CV-830 (GLS/DEP), 2008 WL 3930032, at *12-13 (N.D.N.Y. Aug. 21, 2008) (the record lacks any assessment from either a treating source or a consultant supporting a finding of plaintiff could sit for eight hours in a given workday; this portion of the ALJ's RFC determination was not well-supported).

The ALJ marshaled minimal medical evidence to support the little weight that he assigned to the only medical opinions in the record addressing plaintiff's ability to sit, stand, and walk. For example, the ALJ supported his assignment of little weight to the relevant portion of Dr. Freeman's opinion by referring to the treating physician's August 2011, May 2013, and August 2013 notes that described "normal musculoskeletal findings" and COPD symptoms that were under control. (T. 18, 296, 467, 536-38). The ALJ did not discuss other portions of plaintiff's treatment records that would arguably support Dr. Freeman's restrictive conclusions with regard to plaintiff's history of back pain, her increased fatigue, and her reported difficulty walking. (T. 298, 307, 312, 317, 328, 528, 531). *See Royal v. Astrue*, No. 5:11-CV-456 (GTS/ESH), 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion) (citing, *inter alia*, *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)) (Rep't-Rec.), *adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).

In discounting Dr. Rosenberg's opinion, the ALJ emphasized plaintiff's activities

of daily living. The ALJ noted that plaintiff was able to take care of her personal needs, perform light household chores, care for her cats, prepare daily meals, do laundry, and go grocery shopping. (T. 16-18). None of the activities relied upon by the ALJ inherently demonstrate plaintiff's capacity for prolonged standing, sitting, or walking. At the hearing, plaintiff testified that it took her several days to complete chores that would ordinarily take a few hours because she had to take frequent breaks due to hip, knee, and foot pain. (T. 74). She drove, but testified that she only went to doctor's appointments, and made a monthly trip to the grocery store. (T. 74-75). Her only hobby was reading. (T. 76). In any event, "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Stoesser v. Comm'r of Soc. Sec.*, No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (claimant's daily activities–including cleaning the house, watching television and playing video games, cooking simple meals, and shopping for groceries–did not support the ALJ's finding that plaintiff could perform sedentary work over an eight-hour workday in light of plaintiff's testimony that he could not sit for more than 30 minutes to an hour without standing up) (Rep't-Rec.), *adopted*, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011).

Although the ALJ assigned "great weight" to "most" of Dr. Freeman's and Dr. Rosenberg's opinions, and did not expressly discount their opinions that plaintiff would need to alternate positions between sitting and standing approximately every half hour, the ALJ did not impose any similar restriction in the RFC. (T. 19). The ALJ's erred in

failing to discuss this issue, because frequent shifting of positions would likely limit the range of both light and/or sedentary work available to plaintiff. *See Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *7 (N.D.N.Y. Mar. 3, 1998) (citing Social Security Ruling ("SSR") 83-12) (Rep't-Rec. approved at same citation). SSR 83-12 provides that when an individual is capable of either sedentary or light work, but must be able to alternate between sitting and standing, "a VE should be consulted to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253, at *4 (1983).[4]

## 2.    Mental Limitations

Dr. Cheryl Loomis conducted a consultative psychiatric examination of plaintiff on October 17, 2012. (T. 362-66). During the examination, plaintiff reported that she experienced depression, panic attacks, and anxiety that led to dysphoria, lack of motivation, crying spells, and social withdrawal. (T. 15, 363). She also reported flashbacks to the traumatic death of her friends in 2001. (T. 363). Dr. Loomis found plaintiff to be cooperative, with adequate social skills and appropriate eye contact. (Id.). Her thought processes were coherent and goal directed. She presented a dysphoric affect and a dysthymic mood. (T. 364).

Dr. Loomis described plaintiff's attention and concentration as mildly impaired, possibly due to her emotional distress and limited intellectual functioning. (T. 364). Plaintiff was able to successfully count from 1 to 20 and had mixed results with simple

---

[4] As discussed in Section VII, *infra*, the ALJ consulted a VE but based his hypothetical questions on an RFC that did not require plaintiff to alternate between sitting and standing on a regular basis.

calculations. (*Id*.). She was unable to complete any serial 3s. (*Id*.). Dr. Loomis found that plaintiff's memory was also mildly impaired. Plaintiff was able to recall a recited series of words, but had difficulty recalling several series of numbers. (*Id*.).

In Dr. Loomis's opinion, plaintiff could follow and understand simple directions and instructions, and could perform simple tasks independently. (T. 365). She could not maintain attention and concentration, but was able to maintain a regular schedule and learn new tasks. Plaintiff could not perform complex tasks, either independently or with supervision. (*Id*.). She could make appropriate decisions and relate adequately with others, but could not appropriately deal with stress. (*Id*.). Dr. Loomis opined that plaintiff's difficulties were caused by her psychiatric symptoms. (*Id*.).

The ALJ found that Dr. Loomis's opinion was "nonspecific in nature," but stated that he gave it "great weight, except the portion that the [plaintiff] is unable to maintain attention and concentration." (T. 15). The ALJ discounted this portion of the opinion with the summary conclusion that '[t]he record as a whole, including examination findings and daily activities do not support that the [plaintiff] has significant problems focusing, attending or concentrating and that portion of the assessment is given little weight." (*Id*.).

In his discussion of Dr. Loomis's opinion, the ALJ did not identify what portions of the record contradicted the consultative examiner's findings. In a separate section of the opinion, the ALJ cited plaintiff's performance of household chores, her care for a young grandson, and her hobby of reading as proof that plaintiff had the ability to maintain adequate attention and concentration during the workday. (T. 16, 19). The

ALJ's findings overstate the record evidence. Plaintiff testified that she was able to perform daily chores, but that she required regular breaks that significantly delayed her completion of these tasks. (T. 83). She testified that she typically spent part of her morning watching her young grandson, but also testified that she had to lie down and rest for several hours afterward. (T. 74). There is no medical opinion evidence in the record to support the ALJ's supposition that plaintiff's reading habits contradict Dr. Loomis's findings and demonstrate an ability to concentrate for extended periods. To the contrary, plaintiff's treating physician, Dr. Michael Freeman, opined that plaintiff would be off-task for approximately twenty percent of the workday. (T. 555). Dr. M. Totin, a non-examining state agency medical consultant who reviewed plaintiff's medical records in November 2012, opined that plaintiff would have moderate limitations in her ability to complete a normal workday without interruption and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 382). The ALJ assigned "great weight" to Dr. Totin's opinion but did not address the state consultant's findings regarding plaintiff's ability to maintain attention and concentration (T.15).

In summary, the ALJ's assessment of the psychiatric opinion evidence suffered from the same defect as his physical RFC assessment – the ALJ substituted his own conclusions for competent medical opinion and failed to support those conclusions with substantial evidence.[5] Therefore, on remand the Commissioner must also properly

---

[5] Plaintiff argues that the ALJ also erred by failing to assign any specific weight to the opinion of licensed clinical social worker Maria Wibbels, who completed an evaluation report on March 16, 2012. (T. 323-25). The ALJ discussed LCSW Wibbel's findings and her recommendation that plaintiff receive vocational testing and an evaluation to help plaintiff

address the totality of medical opinion and other evidence related to plaintiff's mental impairments.

## VII. **VOCATIONAL EXPERT**

### A. **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* "Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments[6] are present or when exertional impairments do not fit

---

"transition into a career that will be rewarding but where she can work alone." (T. 15, 325). Therefore, despite the lack of specific weight assigned to this "other source," any error is harmless because the court is able to discern the ALJ's reasoning with regard to LCSW Wibbel's opinion. *See Petell v. Comm'r of Soc. Sec.,* No. 7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *11 (N.D.N.Y. Mar. 21, 2014).

[6] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id*. at 276-277.

**B. Application**

The ALJ relied on his erroneous RFC finding in his formulation of hypothetical questions to the VE, and in the step five analysis that other jobs existed in significant numbers in the national economy that plaintiff could perform. (T. 20-21, 90-93).

Hence, the ALJ's ultimate determination that plaintiff was not disabled was also tainted, and the step five determination must be reconsidered on remand.

## VIII. <u>NATURE OF REMAND</u>

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum Decision.

Dated:      July 13, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge